1  DANIEL A. HOROWITZ State Bar No. 92400
   Attorney at Law
2  P.O. Box 1547
3  Lafayette, California 94549

5  Attorney for Andrew Cohen

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW COHEN, | No.  CV-08-1443 JL |
| Plaintiff, | Date: April 30, 2008 |
| | Time: 9:30 am |
| vs. | Honorable James L. Larson |
| GAVIN NEWSOM, HEATHER FONG, CITY AND COUNTY OF SAN FRANCISCO, GO DADDY GROUP, INC. and DOES 1-100 | |
| Defendants | |
| _____/ | |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**[F. R. CIV. P. 12(B)(6)]**

1

## STATEMENT OF FACTS

Defendant's statement of facts is generally accurate. The following minor errors may be relevant to the disposition of this motion so they are pointed out here as follows:

*1. Cohen's account for website hosting with Go Daddy was never frozen nor was he denied access to his account. (2:4-5)*

In fact, the complaint alleges that Andrew Cohen was unable to access his account. He want to modify his account settings so that his home address would not be displayed. Defendant's motion at 3:15-21 accurately sets forth the pleading on this point.

*2. The videos were publicly available on Andrew Cohen's website. (3:6)*

This is not fundamentally accurate.

The website was never indexed on Google/DMOZ etc. It could not be found unless a person knew the exact address and typed it in. It was posted so that the officers in the precinct could see the video. When the SFPD told Cohen that there was a problem with the video being displayed on the website, he took it down. It was taken down before the Mayor/Chief's press conference.[1]

## PROCEDURAL HISTORY

Defendant's procedural history is accurate except for the following:

*1. The Go Daddy Group, Inc. was not properly served. (3:4)*

In fact, Go Daddy Group, Inc. was properly served and they were given numerous extensions of time to answer. They were finally dismissed because 18 USC 2707 provides them

---

[1]This is alleged at paragraph 15 which reads:

> The website in question had hosted the comedy videos but these had been removed when the SFPD investigators on this matter asked Cohen to remove them. The investigators also had asked Cohen to retrieve the four copies of the video that were on disk and this had been agreed to as well. In other words, at the time of the press conference, no members of the public were known to have seen the video, the website was invisible to "Google" as it had not been indexed and the videos had been removed.

**RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS [F. R. CIV. P. 12(B)(6)]**                     2

with immunity for their conduct.

## BASIS OF COHEN'S CIVIL RIGHTS ALLEGATIONS

*United Brotherhood of Carpenters,* cited by defendant, states the obvious. A civil rights violation requires that "a person [must] either [be] injured in his person or property or deprived of any right or privilege of a citizen of the United States." (United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 828-29 (1983)). Defendant then questions whether a violation of Andrew Cohen's civil rights has been pled.

In fact, the complaint specifically alleges violations of Andrew Cohen's 1st & 4th Amendment rights.[2] Cohen is alleging that the Mayor and Chief penalized him for exercising his 1st Amendment rights. Employment law creates a potential exception to the 1st Amendment in certain circumstances where discipline arising from job related conducted. Cohen however contends that his conduct was not job related and even if it were, the conduct of the Mayor and Chief was not job discipline but political grandstanding at his expense and then ties it to his fear that he or his children would be harmed.

The complaint describes this scenario at paragraph 23.

> During this same period, Gavin Newsom and Heather Fong as well as representatives of the San Francisco Police Department made repeated public statements continuing to present the image of Andrew Cohen as a racist, sexist and homophobe. In reality, Cohen was just the opposite. The danger created by the public venting of these false statements is that is unlikely that the random psychopath who might be stirred to harm Cohen (or his children), would bother to make a careful pre-homicide, inquiry. Therefore to a limited number of sick individuals the statements of the Mayor and the Chief of Police might well be seen as a call to arms.

---

[2] "The freezing of Andrew Cohen's account was a violation of his First Amendment rights and an illegal seizure under the Fourth Amendment." (Par. 21)

**RESPONSE TO DEFENDANT'S
MOTION TO DISMISS [F. R. CIV. P. 12(B)(6)]**         3

1  This fear relates very specifically to the Go Daddy aspect of this case but it goes beyond
2  that to harm caused to Cohen by the Mayor and Chief. Even without the Go Daddy exacerbation
3  of the problem, the fear(s) would still exist.

4  It is the press conference and not any job action that is the focus of this lawsuit. There is
5  no employment claim here because Cohen alleges that the actions of the Mayor/Chief are outside
6  any aspect of the employee/employer relationship.

7  The 4th Amendment violation arises when the police used 18 USC 2703(f) to require Go
8  Daddy to freeze Cohen's website thereby denying him the ability to remove his home address
9  from the worldwide web. This statute contemplates freezing while a search warrant is being
10 sought. As far as anyone knows, no search warrant was ever sought.

11 The freezing of the account caused damages under either theory because both the 1st and
12 4th Amendment violations because under either theory the conduct of defendants created a fear of
13 having his home address on the web at the same time that the Mayor and Chief are leading a
14 publicity campaign to paint Cohen as racist, sexist (and who knows what else).

## WAS COHEN'S SPEECH PROTECTED OR NOT ?

16 The narrow employment law aspect of the case is whether the Mayor/Chief had the right
17 under any circumstances to take action with respect to his video. This is a narrow point in the
18 sense that if the answer is no, they cannot try to explain their press conference as being justified
19 under any employer/employee scenario. Cohen would prefer an analysis where the conduct is
20 protected and not subject to employer discipline and where the conduct of the Mayor/Chief is
21 simply outside any reasonable bounds. Under either employment scenario, the conduct of the
22 Chief/Mayor is unreasonable.

23 In terms of the employment issue, the facts in San Diego v. Roe, 543 U.S. 77 (U.S. 2004)
24 are similar enough to this case that it bears careful analysis to understand what rights the
25 Mayor/Chief had and what rights Cohen had, as well as where the grey areas are.

26 In *San Diego v. Roe* a police officer made videotapes just as Andrew Cohen did.

**RESPONSE TO DEFENDANT'S
MOTION TO DISMISS [F. R. CIV. P. 12(B)(6)]**                    4

However, Officer Roe's videos showed him stripping off a police uniform and masturbating[3]. While Cohen's videotapes were entertaining, they were not quite that "entertaining". Cohen's tapes were more Saturday Night Live than the Mitchell Brothers. At trial, Cohen would make the argument that his videos were meant for private entertainment (use at the Christmas party) and had genuine satirical/social value.

Unlike Officer Roe, Cohen did not distribute his video to the general public and he did not sell it. Officer Roe sold the videos through an Internet site with a user profile identifying the officer as being employed in law enforcement. While Cohen pulled the videos as soon as he knew that the SFPD was objecting, Officer Roe, refused to pull his videos and was ultimately terminated.

The issue for the Supreme Court in *San Diego v. Roe* was whether the conduct of the officer was truly private or whether it was so tied to his job that it brought the department into disrepute. The Supreme Court's analysis is beneficial to Cohen for a variety of reasons.

1. Unlike Officer Roe where the social value is questionable and the association of the work with his police employment is potentially exploitive, Cohen's video has serious social value either as Christmas party entertainment (which was its intended use) or more broadly as social commentary.

This raises a question of fact because one must "... reconcile the employee's right to engage in speech and the government employer's right to protect its own legitimate interests in performing its mission..." *San Diego v. Roe*, 543 U.S. 77, 81 (U.S. 2004)). The line where the 1st Amendment can be infringed by an employers interests "... requires a court evaluating restraints on a public employee's speech to balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S., at

---

[3] Which raises the question, "If he is so unashamed as to post himself on the internet, why do we protect his identity calling him "John Roe"?

**RESPONSE TO DEFENDANT'S
MOTION TO DISMISS [F. R. CIV. P. 12(B)(6)]**     5

1  568, 20 L. Ed. 2d 811, 88 S. Ct. 1731..." (*San Diego v. Roe*, 543 U.S. 77, 81 (U.S. 2004))

2  Pickering v. Board of Educ., 391 U.S. 563 (1968) does not draw an bright line but instead
3  provides practical guidelines that are ultimately fact driven.

> What we do have before us is a case in which a teacher has made erroneous public
> statements upon issues then currently the subject of public attention, which are
> critical of his ultimate employer but which are neither shown nor can be presumed
> to have in any way either impeded the teacher's proper performance of his daily
> duties in the classroom or to have interfered with the regular operation of the
> schools generally.  In these circumstances we conclude that the interest of the
> school administration in limiting teachers' opportunities to contribute to public
> debate is not significantly greater than its interest in limiting a similar contribution
> by any member of the general public.

(*Pickering v. Bd. of Educ.*, 391 U.S. 563, 572-573 (U.S. 1968))

. *Garcetti v. Ceballos*, 547 U.S. 410 (U.S. 2006) holds that a government entity broad discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

See also: *Bekiaris v. Board of Education*, 6 Cal. 3d 575, 592 (Cal. 1972)

It is fair to suggest that under a best case reading of the facts as pled, the Cohen videos might be protected as pure speech without the right of an employer to comment.

**Newsom & Fong Acted Directly**

The lawsuit does not complain of Newsom/Fong's personnel investigation. The lawsuit does not try to directly tag Newsom / Fong with responsibility for the Letter of Preservation sent to Go Daddy. Defendant's motion seems to assume this and given the fact that these are notice pleadings, such confusion is understandable. However, defendant's civil rights action points to the actual conduct of Newsom/Fong and therefore there is no merit to defendant's argument that the complaint fails because "A supervisor may be held liable only "if there exists either, (1) his or

**RESPONSE TO DEFENDANT'S
MOTION TO DISMISS [F. R. CIV. P. 12(B)(6)]**                    6

her personal involvement in the constitutional deprivation ..." (6:21-23)

For example, paragraph 12 reads:

In politicizing the video, making it public, making it a national news story, showing it to the press and to individuals such as the Rev. Amos Brown, each of the defendants Newsom and Fong, knew that there would be major implications and pressures applied to Andrew Cohen in the public (not private). Pressures could include criticism, protests, hate mail and potentially attacks on his life.

This is not indirect. The Mayor and Chief gave the press conference and took videos which were unknown to the general public and broadcast them for entire United States to see. While the entire United States doesn't watch CNN, Good Morning America, ABC, NBC, CBS or read Matier & Ross etc., millions did see the videos and millions heard the Mayor and Chief excoriate Andrew Cohen and turn him into the David Duke of San Francisco. People have been seriously mistreated for less.

Paragraph 20 alleges that the Go Daddy freezing was done at the insistence of Newsom/Fong. Even if it was not done by them, the freezing exacerbated the problems that Cohen was experiencing. He was already fearful but now learned that his home address was available to the public and could not be removed.

The freezing of his Go Daddy account violates the 4th Amendment because it was a seizure without probable cause. The federal statute permits freezing but only when a warrant is being sought. This is no different from a physical freezing of a premise when officers seek a warrant in good faith.[4]

However, it is not an invitation to freeze records on a whim. The statute specifically ties the freezing to obtaining a warrant.

---

[4] See Segura v. United States, 468 U.S. 796, 810, 82 L. Ed. 2d 599, 104 S. Ct. 3380 (1984) ("Securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.")

**RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS [F. R. CIV. P. 12(B)(6)]**          7

(f) Requirement to preserve evidence.

(1) In general. A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process.

(18 USC 2703 (f))

The SFPD never sought or obtained a warrant.[5]

Unless defendant is arguing that 18 USC 2703(f) is an open invitation to government to freeze and preserve records, then the abuse of the statute to seize is a 4th Amendment violation.

## PUNITIVE DAMAGES

Defendant challenges the right of Cohen to seek punitive damages against the city. However, these are pled against Gavin Newsom and Heather Fong individually and not against the City and County.

Dated: March 26, 2008

_____
Daniel Horowitz
Attorney for Andrew Cohen

---

[5] For a variety of reasons not relevant here, plaintiff believes that no warrant was ever sought. In part this is based upon the state of discovery in the case pending between Cohen and other police officers against the City & County.

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS [F. R. CIV. P. 12(B)(6)]**   8