1
2
3                      IN THE UNITED STATES DISTRICT COURT
4                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
5
6   ANDREW COHEN,                              No. C 08-01443 SI
7              Plaintiff,                      **ORDER GRANTING DEFENDANTS'**
         v.                                    **MOTION FOR SUMMARY JUDGMENT**
8
    GAVIN NEWSOM, *et al.*
9
              Defendants.
10  _____/
11
12          Defendants have filed a motion for summary judgment.  This motion is scheduled for  hearing

on February 27, 2009.  Pursuant to Local Rule 7-1(b), the Court determines that the matter is appropriate

for resolution without oral argument, and VACATES the hearing.  Having considered the papers

submitted, and for good cause shown, defendants' motion is GRANTED.

13
14
15
16
17                                      **BACKGROUND**
18          Plaintiff Andrew Cohen is a police officer employed by the San Francisco Police Department

("SFPD").  On November 24, 2005, plaintiff registered the domain name "www.insidethesfpd.com"

through Go Daddy Inc. ("Go Daddy"), a company that sells domain names, i.e. addresses of internet

webpages.

19
20
21          In December of 2005, plaintiff posted several videos portraying San Francisco police officers

on www.insidethesfpd.com.  On December 7, 2005, San Francisco Mayor Gavin Newsom and San

Francisco Police Chief Heather Fong displayed portions of the videos at a press conference and

condemned them as racist, sexist, and homophobic.

22
23
24
25          On the same day, San Francisco Police Inspector James Ramsey sent a letter to Go Daddy

regarding plaintiff's account.  The letter stated, in relevant part:

26
27                 You are hereby requested to preserve, for a period of 90 days, the records
                described below currently in your possession, including records stored on backup media,
28

United States District Court
For the Northern District of California

in a form that includes the complete record. . . . If compliance with the request may result in a permanent or temporary termination of service to the accounts described below, or otherwise alert the subscriber or user of these accounts as to your actions to preserve the referenced files and records, please contact me before taking such actions.

This request applies only retrospectively. It does not in any way obligate you to capture and preserve new information that arises after the date of this request.

*See* Decl. of Warren Metlitzky in Supp. of Def. Mot. ("Metlitzky Decl."), ex. H at GD08 153.

On December 9, 2005, plaintiff realized that his personal contact information was accessible to the public on www.insidethesfpd.com. *See* Decl. of Andrew Cohen in Supp. of Pl. Opp. to Def. Mot. ("Cohen Decl.") ¶ 1. Plaintiff logged onto his account to remove his home address from the publicly available contact information but was unable to do so. *See id.* ¶¶ 8, 11.

On November 29, 2007, plaintiff filed the instant action in San Francisco County Superior Court. Defendants removed to this Court on March 13, 2008.[1] Plaintiff's first amended complaint alleges that Newsom, Fong, and the City and County of San Francisco (collectively, "defendants") violated 42 U.S.C. § 1983 by engaging in a conspiracy to violate plaintiff's civil rights by "freezing" his website. *See* First Amended Complaint ¶ 17.

On July 11, 2008, the parties stipulated to limited discovery and early summary judgment on the issue of whether plaintiff's website was frozen by the SFPD. Now before the Court is defendants' motion for summary adjudication of the issue of whether defendants "froze" plaintiff's website.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to

---

[1]The complaint originally included GoDaddy Group, Inc. as a defendant. On March 18, 2008, plaintiff voluntarily dismissed GoDaddy from the action.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  support the non-moving party's case. *See id.* at 325.

2      The burden then shifts to the non-moving party to "designate 'specific facts showing that there

3  is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the

4  non-moving party must "do more than simply show that there is some metaphysical doubt as to the

5  material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

6  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which

7  the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

8  242, 252 (1986).

9      In deciding a summary judgment motion, the evidence is viewed in the light most favorable to

10 the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255.  "Credibility

11 determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

12 are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

13 The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory,

14 speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and

15 defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

16

17                                    **DISCUSSION**

18      The only issue before the Court is whether the December 7, 2005 letter from the SFPD to Go

19 Daddy "froze" the account associated with the website www.insidethesfpd.com.  Plaintiff defines the

20 "freezing" of his account as being unable to change the contact information that contained his home

21 address.  The parties dispute whether the SFPD caused plaintiff to be prevented from changing the

22 contact information associated with www.insidethesfpd.com.

23      Defendants claim that plaintiff could have hidden his home address at any time by buying Go

24 Daddy's privacy service.  For a fee, Go Daddy offers customers a "privacy" service that hides the name

25 and contact information of website owners.  When a customer buys the service, the website's

26 registration name and all contact information are displayed as belonging to "Domains by Proxy," rather

27 than the website owner. *See* Metlitzky Decl., ex. G, Tr. 21:22-22:23 (Go Daddy Depo.).  Go Daddy

28 claims that plaintiff could have purchased this service when he first registered www.insidethesfpd.com

                                      3

or at a later time. *See id*. at Tr. 23:5-8.  Go Daddy's records reflect that plaintiff bought the privacy service through an online purchase on May 23, 2007.  *See id.*, ex H, at GD08 51.  Plaintiff cites no evidence that if he had attempted to purchase Go Daddy's privacy service in December of 2005, he would have been prevented from doing so.

Defendants also claim that the SFPD's preservation letter directed Go Daddy to preserve the contents of www.insidethesfpd.com as it appeared on December 7, 2005, not to prevent plaintiff from changing the site.  The SFPD's letter directed Go Daddy to "preserve, for a period of 90 days" the records in question.  It also directed Go Daddy to contact the SFPD if complying with the request would cause "permanent or temporary termination of service to" plaintiff's account.  *See* Metlitzky Decl. ex. H at GD08 153.  The letter specified that the request applied "only retrospectively" and did not obligate Go Daddy to "capture and preserve new information that arises after the date of this request." *Id.* These instructions establish that the SFPD anticipated that plaintiff would be able to access and change information on his account after December 7, 2005.  The text of the letter refutes plaintiff's contention that the SFPD intended or requested that plaintiff's account to be "frozen."

Finally, defendants argue that Go Daddy's employees interpreted the SFPD's preservation letter as requesting only that the company preserve the content of www.insidethesfpd.com as it appeared on December 7, 2005, not that they prevent plaintiff from accessing or changing his account.  Keena Willis, Go Daddy's senior paralegal compliance manager, testified that she interpreted the letter as directing her to preserve the content of plaintiff's website.  *See id.*, ex. G, Tr. 65:2-7.  After receiving the letter, she used an electronic tool to take a "screen shot" (a digital picture of an image on a website) of the websites referenced in the SFPD's letter.  *See id.* Tr. 75:11-23.  Willis then saved the screen shots onto CDs.  *See id.* Tr. 65:8-66:8.  Willis also testified that plaintiff could have accessed his account while Willis took the screen shots and that neither Willis nor anyone else at Go Daddy is able to block customers' access to their accounts.  *See id.* Tr. 75:24-76:20.  Plaintiff cites no evidence from any witness with personal knowledge that calls into question Willis' testimony.

Plaintiff's attempts to create a factual dispute on the issue of whether the SFPD's preservation letter had the effect of preventing plaintiff from removing his home address from www.insidethesfpd.com are unavailing.  First, plaintiff argues that the "plain meaning" of the December

7 preservation letter was to "freeze" the account for 90 days – that is, to prevent plaintiff from changing content on the account for 90 days.  The Court disagrees.  As discussed above, the letter specified that the preservation request applied "only retrospectively"; the letter explicitly provided that the request did not apply to changes plaintiff might make to the website in the future.  The "plain meaning" of the letter was therefore that Go Daddy should memorialize the appearance of the website on December 7, 2005, save that evidence for 90 days, and avoid interfering with plaintiff's access to his account.

Second, plaintiff argues that Go Daddy's employees interpreted the SFPD as requesting that they prevent plaintiff from changing the contact information on his website.  Plaintiff attests that in December, 2005, he called Go Daddy customer service for assistance with changing the address listed on his website.  *See* Cohen Decl. ¶ 15.  The representative informed plaintiff that he must direct all questions to the president of Go Daddy.[2]  *See id.* ¶ 17.  Plaintiff argues that "the most rational inference" is that Go Daddy's employees believed they could not assist plaintiff in changing his address.  Pl. Opp., at 4.  The Court disagrees.  Willis testified that it is Go Daddy's policy, upon receipt of a police preservation letter, to direct employees not to discuss the account at issue with the customer.  *See* Metlitzky Decl., ex. H, Tr. 37:23-39:11.  Plaintiff cites no evidence that the Go Daddy customer service representative directed plaintiff to the company's president in an attempt to prevent plaintiff from changing his address.  The Court must draw "all justifiable inferences" in favor of plaintiff, the non-moving party.  *See Anderson*, 477 U.S. at 255.  Plaintiff's inference is not justifiable, however, in light of the uncontradicted evidence from Go Daddy that its customer service representative was merely following Go Daddy's policy of directing to the president's office all customer inquiries about an account that is the subject of a police preservation notice.

Third, plaintiff cites an entry in Go Daddy's logs as evidence that Go Daddy employees understood the preservation letter to request that they prevent plaintiff from accessing his account.  The complete log entry, dated December 6, 2005, reads:

---

[2]  Plaintiff testified at his deposition that he did not contact the president's office after his conversation with the customer service representative.  *See* Metlitzky Decl., at ex. E, Tr. 48:9-12 (Cohen Depo.).

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

OOP[3] – DO NOT DISCUSS WITH CUST – Inspector Ramsey of SFPD contacted about sending a subpoena to Legal. Informed Legal is gone for the night, and he will be faxing it to OOP also for delivery in the morning. Ramsey said site was going to be going under internal investigation / administrative investigation by SFPD for unprofessional content by an officer. Subpoena will be just to lock and preserve site.

*See* Metlitzky Decl., ex. H, at GD 08 63. According to plaintiff, the instruction to "lock and preserve" the site meant that Go Daddy employees intended to prevent plaintiff from changing his address. The Court disagrees. Willis testified that the only communication that Go Daddy did receive from the SFPD was the preservation letter.[4] *Id.*, ex. G, Tr. 64:14-22. As discussed above, the preservation letter did not direct Go Daddy to "freeze" the account and the Go Daddy employee who was responsible for complying with the request testified that she did not understand it as doing so.

Fourth, plaintiff relies on his statement in his declaration that in December of 2005, he attempted to obtain "administrative access" to his account in order to change his address but was blocked from doing so. *See* Cohen Decl. ¶ 11. He attests that "weeks later," he was able to make this change. *See id.* Plaintiff's contention that he was able to change his contact information weeks later is contradicted by Go Daddy's logs, which indicate that plaintiff did not change his "registrant contact info" until May 23, 2007. *See* Metlitzky Decl., at ex. H, GD 08 151. Plaintiff's statement that he was specifically recalled being barred from gaining administrative access to his account is contradicted by his deposition testimony that he had no recollection of what happened when he tried to access his account:

Q: Do you remember encountering any particular technical problem adding content to the site that you attribute to the site being frozen?
A: Well, I don't remember the first few days of what happened, if I attempted to and it failed or if I didn't attempt to at all. I just don't know.

*See id.*, ex. E, Tr. 42:15-20.

In the face of the text of the SFPD's letter, the testimony of the Go Daddy employee who was

---

[3] "OOP" apparently refers to "Office Of the President."

[4] Plaintiff does not cite evidence that Go Daddy ever received a subpoena from the SFPD, and Willis testified that Go Daddy never did receive a subpoena from the SFPD. *See* Melitzky Decl., ex. G, Tr. 64:14-22. An entry made by Willis in Go Daddy's log dated December 7, 2005 states "Received subpoena in re: insidethesfpd.com from the San Francisco Police Dept." *See* Metlitzky Decl., ex. H, at GD 08 63. It appears that the preservation letter was called a "subpoena" in the log. In any event, the evidence was uncontroverted that GoDaddy did not understand the SFPD's request to require that plaintiff be prevented from accessing or altering his account.

**United States District Court**
For the Northern District of California

responsible for responding to the letter, Go Daddy's logs, plaintiffs' deposition testimony, and the uncontradicted evidence that plaintiff could have bought privacy settings that would have hidden all of his contact information, the Court finds that plaintiff's self-serving declaration does not create a factual dispute on the issue of whether plaintiff was prevented from changing his home address on www.insidethesfpd.com. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.") (citations omitted). Moreover, even if the Court were to accept plaintiff's declaration as evidence that he could not change the account information regarding his address in December of 2005, defendants argue that plaintiff has no foundation for his opinion that the problem was caused by action taken by Go Daddy. The Court agrees. Plaintiff has no personal knowledge of Go Daddy's internal procedures and has no basis for concluding that the difficulties he encountered were due to action taken by Go Daddy, as opposed to plaintiff's own error or a glitch in his internet connection. Plaintiff's unfounded speculation about the cause of the problem is not sufficient to challenge the testimony of the Go Daddy employee who claims that she responded to the preservation letter by saving screen shots of plaintiff's website onto a CD and that her actions did not interfere with plaintiff's access to his account.

Accordingly, the Court concludes that there is no genuine factual dispute as to whether the SFPD's preservation letter prevented plaintiff from changing the account information on www.insidethesfpd.com – it did not. The Court GRANTS defendants' motion for summary judgment on this issue.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment [Docket No. 32]. **It is the Court's understanding that resolution of this issue effectively resolves the action. If so, the parties are directed to file a joint statement to that effect and the Court will enter judgment. If either party disagrees, both counsel are directed to attend the previously scheduled Case Management Conference (Friday, February 27, 2009 at**

1    **3:00 p.m.)  to discuss the status of the action.**

2

3          **IT IS SO ORDERED.**

4

5    Dated: February 25, 2009

6                                                      SUSAN ILLSTON
                                                       United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California